IRVING, P.J.,
dissenting:
¶ 34. The record of Taylor’s trial proceedings clearly establishes that Taylor did not receive a fair trial. Therefore, I dissent from the majority’s affirmation of the judgment of the circuit court. I would reverse and remand for a new trial, free of the prejudicial and irrelevant evidence that permeated Taylor’s trial.
¶ 35. Taylor claims that he received ineffective assistance of counsel at the trial court level.[1] I could not agree more. Normally, we will not address an issue of ineffective assistance on direct appeal because usually the record is insufficient to evaluate the claim. Herrington v. State, 102 So.3d 1241, 1245 (¶ 12) (Miss.Ct.App.2012). However, the record presently before us shows an ineffectiveness of counsel of constitutional dimensions. Here, as in Herrington, “all of [Taylor’s] claims are confined to the record and can be found within the trial transcript.” Id. Additionally, it cannot be reasonably argued that the actions and inactions of counsel — constituting ineffective assistance of counsel of constitutional dimensions — can be justified “under the umbrella of trial strategy.” Id. at 1246 (¶ 17). Therefore, I can find no reason why this Court should deviate from the Herrington precedent, where we addressed an ineffective-assistance-of-counsel claim on direct appeal under facts very similar to those here. There is a well-worn adage in the legal community that “justice delayed is justice denied.” I be *1250 lieve that is the effect of the majority’s decision not to address the ineffeetive-as-sistance-of-counsel claim.
¶ 36. First, let me be clear. The right to a fair trial is the bedrock of our criminal justice system. And this is true whether the evidence of a defendant’s guilt is sparse or plentiful. The reason we hold so firmly to this principle is our failing to do so risks undermining our entire system for the administration of justice and the public confidence in it. With that said, I turn to relevant facts in today’s case.
¶ 37. In June 2011, a Puckett Machinery mechanic was out on a job site examining a skid steer that would not start. The mechanic telephoned Adcock, a technical communicator with Puckett Machinery, for assistance in diagnosing the problem with the skid steer. Adcock entered the skid steer’s serial number into the company’s computer system, which indicated that the skid steer had been stolen. Adcock then called the rental store listed as the owner of the skid steer' and asked a representative if the equipment had been stolen. The representative confirmed that it had. After receipt of this information, Adcock called the Madison County Sheriffs Department to report the stolen skid steer.
¶ 38. Investigator Welch, with the Madison County Sheriffs Department, testified that when he located the stolen skid steer, it was in Walker’s possession at a job site. Investigator Welch stated that Walker, a convicted felon,[2] told him that he bought the skid steer, approximately six weeks earlier, at Whataburger on County Line Road in Ridgeland from a white male with a jack-o-lantern tattoo. Investigator Welch was suspicious of Walker’s statement, so he asked Walker to come to the police station the next morning. At the police station, Walker changed his story and told Investigator Welch that he had bought the skid steer from Taylor, a black male, and that he had known the Taylor family for a while. Investigator Welch added that Walker told him that he purchased the skid steer from Taylor for about $23,000, which included the value of two vehicles that he gave Taylor.
¶ 39. Investigator Welch testified, without objection, that he told Walker that the police “were working several cases that involved the Taylors” and that he “asked [Walker] to give [the investigators] all [of the] information that he possibly could involving this case[.]” Investigator Welch also testified that he let Walker know that if he cooperated in helping catch the “thief,” he would “help [Walker out] some” because “this was such a large investigation ... [that] spanned several counties.” On cross-examination, Investigator Welch stated that he did not arrest Walker because he was “looking at the bigger picture of what the Taylors had been involved m[.]”
¶ 40. Walker testified that he owns and operates Jackson Tree Service. He claimed that Taylor never worked for him and that he had only seen Taylor once— chatting with one of Walker’s employees at a work site — before meeting him at Wha-taburger. According to Walker, Taylor approached him at Whataburger and told him that he had a piece of equipment he could probably use, and Walker looked at some pictures of the skid steer on Taylor’s cell phone. According to Walker, he and Taylor met at Whataburger a second time, and Walker agreed to purchase the skid *1251 steer from Taylor for about $24,000,[3] which he would pay with cash and two vehicles. Walker testified that he gave Taylor $5,000 that day and told him where to pick up the two vehicles. He also told Taylor that he would pay the remaining amount of the purchase price later. According to Walker, Taylor took the skid steer off of Taylor’s trailer, and Walker pulled it onto his trailer in the Whataburger parking lot. Walker attested that he did not a get a bill of sale for the skid steer.
¶ 41. Walker further testified that six weeks after the purchase, the skid steer broke down on one of his job sites, and he called a Puckett Machinery mechanic to come out and fix it. After about two hours, a deputy arrived and informed Walker that he was in possession of a stolen machine. Walker explained that, because he was mortified and afraid, he initially lied when he gave Investigator Welch a description of the man who had sold him the skid steer.
¶ 42. Taylor, on the other hand, testified that he had known Walker for about two years and that he had worked on a few jobs for Walker’s company. He stated that Walker had brought and used the same skid steer for all of those jobs. Taylor said that he never had possession of the skid steer and did not sell the skid steer to Walker. He stated that he did not know anything about how Walker obtained the skid steer and that he had never been to Whataburger. When asked how he got the picture of the skid steer on his cell phone, Taylor stated that Walker sent the picture to his cell phone because Taylor wanted to see how the skid steer looked. Taylor further testified that he gave Walker cash and a diamond watch for the Jeep and car because Walker told him that he was having financial issues.
DOES THE RECORD AFFIRMATIVELY SHOW INEFFECTIVENESS OF CONSTITUTIONAL DIMENSIONS?
¶ 43. In my judgment, Taylor’s counsel was grossly ineffective in two respects. First, he failed to object to Investigator Welch’s testimony regarding the large investigation involving the Taylors. Second, he failed to object to the blistering and very prejudicial cross-examination of Taylor that went far beyond the permissible scope of impeachment that is allowed under Rule 609 of Mississippi Rules of Evidence. I will discuss these two points in reverse order, first addressing the failure of Taylor’s counsel to object to the prosecution’s cross-examination of Taylor.
¶ 44. Prior to trial, Taylor’s counsel filed a motion in limine to exclude Taylor’s past criminal history because the probative value of the information was greatly outweighed by the prejudicial effect. Then for some inexplicable reason, Taylor’s counsel abandoned the motion and placed Taylor on the stand. I obviously find no fault with counsel’s decision to place Taylor on the stand. Clearly that decision falls within the ambit of trial strategy. It is what occurred after Taylor took the stand that shows counsel’s incompetence. First, it appears that Taylor’s counsel thought that by placing Taylor on the stand, the prosecution was entitled to inquire, without any limitation, into the details of all of the prior convictions that Taylor had. At the beginning of Taylor’s counsel’s direct examination of Taylor, the trial judge asked the parties to approach the bench. During the bench conference, the following dialogue occurred:
[DEFENSE COUNSEL]: I was going to admit that he’s a convicted felon.
[THE PROSECUTOR]: He’s got at least three. I was going to—
*1252 [THE COURT]: Are we at that point now? You’re moving past your motion.
[DEFENSE COUNSEL]: I understand. When I put him on the stand, I made it there.
[THE COURT]: He is withdrawing his motion.
[THE PROSECUTOR]: Okay. That’s cool.
¶ 45. Thereafter, Taylor’s counsel had Taylor to testify that Taylor was a convicted felon. I find no fault with counsel eliciting this limited information because after he put Taylor on the stand, the State was entitled to impeach Taylor on the basis of Taylor’s felon status, consistent with the guidelines of Rule 609. Clearly it may have been trial strategy to let the jury know up front during direct examination that Taylor was a convicted felon rather than have it sprung on them during cross-examination. But after Taylor testified that he was a convicted felon, he had been properly impeached. As we said in Her-rington, “only one prior conviction was needed to establish his status [as a convicted felon.]” Herrington, 102 So.3d at 1246 (¶17).
¶46. Following the direct examination of Taylor, Taylor’s counsel allowed, without objection, the following cross-examination:
Q. What felony crimes have you been convicted of?
A. Well, I have a — do you want the year, too?
Q. I’ve got the year. I just want to see if you remember.
A. I have a house burglary, which was in — a house burglary and the alteration of a motor vehicle I.D., which is I changed numbers on a car before in '93. I have a convicted felon with a firearm.
What year was that? &
The convicted felon with a firearm was — I think I caught it like in 2000 maybe or 2001, but I got convicted of it in 2004 maybe or something like that. <d
What else? <y
I have a grand larceny. <J
Where was that from? o*
Covington. <|
Go ahead. What else? g?
I have two cocaines. Those were my last convictions, was I had two drug charges. <j
Okay. So let me make sutq[J I’ve got them all here. You were convicted of[,] you said[,] auto theft? G?
Yes, no, changing numbers on an auto — changing VIN numbers. Let me put it like that.
Still a felony? <©
Yes, sir. !>
Then you were convicted of a felon in possession of a firearm? ¿0
Yes, I was. v>
You were convicted of possession of a stolen firearm in Madison County, Mississippi, were you not? cO
That’s the same charge. !>
That you were convicted of sale of cocaine? «O
A. Yes.
Q. Where was that? .
A. Here.
Q. And you were convicted of possession of cocaine?
A. Yes.
Q. Where was that?
A. That was here.
Q. How many times is that? Twice?
A. Yeah. I understand what you’re saying. It was like under one sentence, though.
*1253 Q. Okay. So we’ve got six felonies so far?
A. Yes. '
Q. Then you got a burglary conviction in Covington County in January of 2012?
A. No, it was grand larceny.
Q. Well, let’s see what it was. Okay? I’ll specifically ask you, Mr. Taylor, if on—
[[Image here]]
Q. Look at that and read particularly this up here with your name up here. Tell the jury what you were convicted of in January of 2012 in Covington County, Mississippi?
A. It was a burglary of an automobile.
Q. So how many felonies is that, seven or eight?
A. No, it’s either six or seven. Some of them I got at one time. It was like two I got at one time.
Q. Mr. Taylor, when did you have time to do much of anything else?
Clearly this cross-examination was very prejudicial and outside the bounds of permissible cross-examination. There cannot be any justification under the umbrella of trial strategy for counsel allowing such evidence to come in through cross-examination. I now ton to the other aspect of Taylor’s trial that evidences incompetence on the part of Taylor’s trial counsel — the failure to object to the evidence regarding the investigation of the Taylors spanning several counties.
¶ 47. Taylor claims that it was error for the jury to hear that he was the target of a large-scale investigation. More specifically, he claims that Investigator Welch’s testimony allowed the jury to speculate that he was responsible for many more crimes, and that Investigator Welch’s testimony was impermissible under Rule 404(b) of the Mississippi Rules of Evidence. As stated, Taylor’s counsel did not object to this evidence. Can his failure to do so be justified as trial strategy? I think not.
¶ 48. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The specific statements that Taylor is referring to from Investigator Welch’s testimony are: (1) the investigators “were working several cases that involved the Taylors”; and (2) “this was such a large investigation ... [that] spanned several counties.” While neither of these statements reveals a specific crime, wrong, or bad act, it is clear that the statements implicate criminal conduct, wrongs, bad acts, and crimes for which Taylor had not been indicted, and fall within the protection of Rule 404(b). However, if the evidence was properly offered to prove one of the exceptions allowed under Rule 404(b), that is, to prove “motive, opportunity, intent, preparation, plan, knowledge, [or] identity ...,” Taylor’s counsel would not have been ineffective for failing to object. There is nothing in the record to suggest that the evidence was offered to prove any of the exceptions allowed under Rule 404(b). But even if that were the case, Taylor’s counsel would have had a duty and responsibility to object under Mississippi Rule of Evidence 403, as the evidence was highly prejudicial.
¶ 49. Rule 403 states, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of *1254 time, or needless presentation of cumulative evidence.” Here, the statements made by Investigator Welch were highly prejudicial, as they connoted to the jury that Taylor was probably guilty of the charged crime because he and his family were already engaged in that type of conduct. In fact, the testimony was not a general comment but a specific one that clearly implicated Taylor. “Incompetent evidence pressed upon the jury as this was, especially if of an inflammatory character, is presumed to have been harmful, and it is only when [an appellate court] can say with confidence that it had, in all probability or likelihood, no such effect that [the appellate court] may decline to reverse on account of it.” Coleman v. State, 198 Miss. 519, 522, 23 So.2d 404, 405 (1945). Here the probative value, if any, of informing the jury that there was a “larger” investigation involving Taylor is substantially outweighed by its potential for undue prejudice. In short, the jury could have erroneously assessed that since Taylor was being investigated for several cases involving stolen items, then it stood to reason that he, in all likelihood, was guilty of receiving the one piece of stolen property for which he was on trial.
¶ 50. In order to prevail on an ineffee-tive-assistance-of-counsel claim, the defendant must establish not only that his counsel’s performance was deficient, but that the deficiency was prejudicial to the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “To qualify as deficient, counsel’s performance must fail to meet an objective standard of reasonableness.” Lawrence v. State, 116 So.3d 156, 158 (¶ 6) (Miss.Ct.App.2012) (citation and internal quotation marks omitted). “[T]here must be a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. (citation and internal quotation marks omitted). If there is ever a case meeting this standard, this one is certainly it. Therefore, for the reasons presented, I dissent.
LEE, C.J., AND ISHEE, J., JOIN THIS OPINION. JAMES, J., JOINS ■ THIS OPINION IN PART.

. It should be noted that Taylor’s appellate counsel is different from his trial counsel.

. Although there was an objection when Walker was asked if he was a convicted felon, the record is unclear as to the basis for the objection or the reason for the trial court’s sustaining the objection.

. At trial, Walker changed the amount that he paid for the skid steer.